## Strong and others *vs.* Campbell.

No action will lie in behalf of publishers of a newspaper, against a postmaster, for a breach of duty in refusing to receive the proofs offered by them in regard to the circulation of their paper, and to give them the publishing of the list of letters remaining in the post office, according to the act of congress and the instructions of the postmaster general, whereby they lost the employment, and the gains and profits arising therefrom.

Demurrer to declaration. The declaration alledged that on the first day of December, 1847, the defendant was postmaster at the city of Rochester, and as such it became and was his duty, by force of the statute in such case made and provided, to advertise letters uncalled for at his office in the newspaper published at Rochester having the largest circulation; that there was at that time in said office a large number of letters uncalled for, which it was the duty of the defendant to advertise. That the plaintiffs then were, and ever since have been, the publishers and proprietors of a newspaper, printed and published daily in the city of Rochester, called the Rochester Daily. Democrat; which paper then had, and ever since has continued to have, the largest circulation of any newspaper printed and published at Rochester, and were ready and willing to advertise the said let-

ters at the price fixed by law. Yet the defendant, well know-
ing the premises, but contriving and wrongfully, maliciously and
unjustly intending to injure and aggrieve the plaintiffs in that
behalf, wrongfully, maliciously and unjustly refused and neglect-
ed to publish the letters uncalled for at his office in the paper
so published by the plaintiffs; whereby the plaintiffs were de-
prived of the profits and advantage which would otherwise have
accrued to them from the printing of the said letters.

The defendant demurred; and assigned the following causes
of demurrer: 1. That the facts stated in the declaration did not
make or state such a case as legally to give this court jurisdic-
tion of the matters therein stated. 2. That it did not appear
that the plaintiffs had any vested right in the advertising of the
letters uncalled for in the post office at Rochester; nor that the
duty on the part of the defendant to advertise the letters un-
called for in the post office at Rochester, was a duty to the plain-
tiffs, or in the due performance of which the plaintiffs had any
exclusive interest or right. 3. That if it was the duty of the de-
fendant to ascertain the letters uncalled for at all, it was only
his duty to do so when ordered or directed by the postmaster
general, and that it did not appear that the postmaster general
ever gave any order to the defendant for the advertisement of
letters uncalled for. 4. That it did not appear that there were
at any time letters uncalled for, which it was the duty of the
defendant to advertise in any paper. 5. That it did not appear
that the plaintiffs ever offered any legal or competent evidence
to the defendant of the amount or extent of the circulation of
the paper published by the plaintiffs. 6. That it did not appear
that the editors of the paper published by the plaintiffs ever
agreed to insert any advertisement of the letters uncalled for,
which it was the duty of the defendant to advertise in any paper,
at the same or for any price not greater than that fixed by law,
nor did it appear that the editors of such paper ever desired the
advertising of such letters. 7. That if any duty devolved upon
the defendant in directing in what paper the advertisement of
uncalled for letters should be inserted, he acted in the perform-
ance of that duty judicially, and as a judicial officer, and was

Strong *v.* Campbell.

not amenable in a civil action for the manner in which he performed that duty.  8. That it did not appear that the paper published by the plaintiffs had any circulation in the city of Rochester, or within the delivery of the post office at Rochester; nor that the plaintiffs offered any evidence of any circulation of their paper in the city of Rochester, or within the delivery of the post office.  9. That it did not appear that the price allowed by law for advertising uncalled for letters was any more than it was worth to advertise the same; or that there were any gains or profits from such advertising.  10. That the statutes of the state of New-York do not prescribe any of the duties of a postmaster, and if there be any other statute prescribing the duties of the defendant as postmaster, the same should be specially set forth.  11. That it did not appear that there ever was any post office at Rochester.  That the office of the defendant is not necessarily a post office.

Joinder in demurrer.

*Geo. F. Danforth*, for the plaintiffs.

*H. Gay*, for the defendant.

*By the Court,* JOHNSON, J.  I have not deemed it necessary to examine the questions raised as to the sufficiency of the averments in the declaration conceding the action to be maintainable, because in my judgment there is no foundation whatever in law for an action, under any conceivable state of pleading, for such a cause.  I think no case or precedent can any where be found which gives it the least countenance or support.  This of itself would afford a very strong presumption against the right of action.  But the position does not rest upon mere negative inferences.  The authorities, I apprehend, will be found, on examination, to be abundant and conclusive against the right of action for the cause alledged.

The cause alledged is a breach of duty on the part of the defendant as a postmaster, in refusing to receive the proofs offered by the plaintiffs in regard to the circulation of their paper, and to give them the publishing of the list of letters remaining in

the post office at Rochester, according to the act of congress and the instructions of the postmaster general, whereby they lost the employment and the gains and profits arising therefrom.

To give a right of action for such a cause, the plaintiff must show that the defendant owed the duty to him personally. Wherever an action is brought for a breach of duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty, and that the duty was imposed for his benefit. But where the duty was created or imposed for the benefit of another, and the advantage to be derived to the party prosecuting, by its performance, is merely incidental and no part of the design of the statute, no such right is created as forms the subject of an action. In this I apprehend all the authorities will be found to agree. (*Martin* v. *Mayor, &c. of Brooklyn*, 1 *Hill*, 545. *Bank of Rome* v. *Mott*, 17 *Wend.* 556. 19 *Vin. Ab.* 518, 520. 1 *Salk.* 19. *Ashby* v. *White*, 6 *Mod.* 51.) In the latter case Holt, chief justice, laid down the rule that it must be shown that the party had a right *vested* in him, in order to maintain the action. And this I apprehend is the true rule. It must be an absolute vested right or interest in contradistinction to one incidental and contingent. The case of *Foster* v. *McKibben*, postmaster of Pittsburg, in the district court of Alleghany county, (*reported in the American Law Journal, new series, vol.* 1, *p.* 411,) is directly in point. The case is nearly in its facts identical with this, and the court held that the action could not be maintained. That case is authority so far only as its reasoning is sound. But the reasons given by the judge who delivered the opinion of the court, will commend themselves to every legal mind, with the weight and force of authority. It is unquestionably the duty of every officer to perform every duty imposed upon him by law, in the manner and to the extent prescribed, and he may be punished for every violation to the injury of the public or that of individuals. But it does not follow that some one has a right of action against him for every neglect or violation of duty, to recover private damages.

Now for whose benefit was the act of congress under considera-

tion passed, and the instructions of the postmaster general given? Not surely that publishers of newspapers might be enabled to obtain profitable employment, and receive emoluments from the public treasury. That was no part of the design of the lawmakers. The design of the law obviously was, first, to benefit persons receiving communications through the post office, by giving the widest possible notice that letters remained on hand ready for delivery; and secondly, to secure the greatest amount of revenue to the department by the delivery of letters and the receipt of postage thereon, which might otherwise never be called for, and consequently be returned to the dead letter office. These plaintiffs had no direct interest in the observance of the law and the regulations of the department, except as they received letters at this office. Every person to whom letters were or might be addressed at this office had an interest in the performance of this duty. Whether such persons could maintain an action for a breach of this character, it is not necessary now to consider. But it is clear, I think, that these plaintiffs, as publishers of a newspaper, in which character they claim, had no such interest as gives a right of action. As connected with their paper they were not within the purview of the statute, except incidentally. It secured to them no fixed and absolute right, and imposed upon them no duty whatever. They were under no obligation to publish the list when offered, and their refusal would have involved no liability to any one. They might make a profit by the performance of the duty, but they sustain no loss by its non-performance. They would not be injured, in any legal sense, by a repeal of the law. We have many statutory regulations requiring notices in various legal proceedings, in sales upon executions, and the foreclosure of mortgages, to be published, some in the state paper and others in newspapers printed in the county. Should the person whose duty it was to publish these notices publish in the wrong paper, and the person for whose benefit the proceeding was instituted or carried on, thereby lose the benefit of the proceeding, and sustain an injury, undoubtedly such person might bring his action and recover his damages. But was it ever heard or claimed, before, that the proprietor of

the paper in which the notice should properly have been published, had any such right or interest in the matter as would entitle him to maintain an action to recover the profits which the publication in his paper would have brought him? That would be a parallel case. The interest is too remote and contingent to be the foundation of a right of which the law takes cognizance.

The action is altogether misconceived, and the defendant must have judgment upon the demurrer.

[MONROE GENERAL TERM, June 3, 1851. *Welles, Taylor* and *Johnson,* Justices.]