P. O'Connell *vs.* W. S. Cruise.

MILLS & HOADLY for plaintiffs. T. D. LINCOLN for defendant.

In Special Term, Sept. 1854. GHOLSON J. presiding.

### P. O'CONNELL *v.* W. S. CRUISE.

The property of a failing debtor, in the eye of the law, belongs to his creditors, and in any disposition he may make of it, he must look to their rights, and their security.

When a merchant, in failing circumstances, sells his stock in trade to his clerk, on a credit, and takes employment as clerk under the vendee, the sale is void as to the creditors of the vendor.

But if the debtor makes a *bona fide* assignment of the notes for the purchase money, and the mortgage to secure the same, and all his interest in the property, to cne, for the benefit of all his creditors, the assent of the creditors will be presumed.

P. O'Connell *vs.* W. S. Cruise.

When the assignment might be injurious, or fraudulent, as to creditors, their express assent must be shown. The mere fact of sale on credit, under an assignment, si not an index of fraud.

Petition for delivery of personal property.

GHOLSON, J.

On the 21st of June, 1854, John P. Walsh sold to Patrick O'Connell, the stock of a bookstore, the lease and fixtures of a store room, and some book accounts, amounting according to an inventory then made, to $10,683 54. The consideration of the sale was secured by seven notes, payable in 6, 9, 12, 15, 18, 21, and 24 months after the date of sale, whether with or without interest is not shown. No cash was paid at the time of sale. The three notes first coming due were for $1000 each, the fourth for $2000, the fifth for $1,683 54, and the last for $2000 each. Shortly after the sale, the notes so received were assigned by Walsh to John B. Ryan, for the benefit of the creditors of Walsh, the aggregate of whose claims is stated to have been about $6,500. Ryan, after getting the notes, not being satisfied with the personal responsibility of O'Connell, urged upon him and Walsh the propriety of securing the notes by a mortgage, and accordingly on the 26th June, 1854, a mortgage was executed by O'Connell to Walsh, to secure the payment of the notes. This mortgage embraced the stock, &c., sold by Walsh to O'Connell. On the 27th June, 1854, Walsh assigned to Ryan the mortgage and his interest in the stock, &c., as he had before assigned the notes, for the benefit of his creditors. On the 19th day of August, 1854, the defendant, a constable, levied upon 23 Bibles and 6 copies of the Life of Christ, a portion of the stock, by virtue of an execution issued upon judgment obtained by Orestes A. Brownson against Walsh, before Esq. Bell, whereupon the

plaintiff filed his petition and affidavit, and obtained the order of delivery in this case.

It appears, that before the sale from Walsh to O'Connell, the latter had been a clerk in the office of the Catholic Telegraph, and had also acted as a book-keeper in the bookstore owned by Walsh—that he had been receiving a salary of from $300 to $400 a year. The inference from the testimony is, that although he had more property, it was, to a limited extent, and not available as capital for the purchase of such an establishment as the bookstore. The character of O'Connell for integrity and industry is unimpeached.

It appears, that from the time of the sale to the present, Walsh has been assisting O'Connell in carrying on the business, receiving a salary of $600 a year.

If this case stood alone on the sale from Walsh to O'Connell, though the parties may have meant what they supposed might be properly done, it would be difficult to escape the conclusion, that under all the circumstances, the effect of the transaction was to hinder and delay creditors. A merchant unable to meet his debts, and expecting to be pressed by his creditors, sells to a clerk in his employ, who has limited means, his whole stock in trade on a long credit, and without security; he then takes employment from his former clerk, and aids in carrying on the business, at a salary nearly double that which was before paid to the clerk. Such a transaction though it may appear fair to the parties, from the unbounded confidence they have in each other, has rarely, within my experience, been sanctioned by the Courts. The property of a failing debtor, in the eye of the law, belongs to his creditors, and in any disposition he may make of it, he must look to

their rights and their security. He has no right to dispose of it with a view of favoring another in whom he has confidence, or of securing a benefit to himself. He may have thought the arrangement the best for the creditors, but it is such as the law cannot permit.

I should, therefore, find that the sale as originally made from Walsh to O'Connell, was not valid, as to the creditors of Walsh.

It will be seen that there were two distinct transactions, one between Walsh and O'Connell, and the other between them and Ryan. The invalidity of the first by no means vitiates the second, and the validity of the second is to be tested by very different examinations from those applicable to the first.

Admitting the invalidity of the first transaction, the effect of the second seems to have been to transfer to Ryan for the benefit of the creditors of Walsh, all his interest in the property. If it was a valid transaction, the creditors were to have the benefit of it—if it was invalid, they got the property. For the transfer by Walsh to Ryan, is not only of the notes and mortgage, but of all his interest in the property.

There are two kinds of assignments—one preferring particular creditors, which is not looked on with favor—the other for all the creditors, which is.

It is true that assignments in favor of all creditors have been held fraudulent and void, and there are objections which may be urged to the assignment in this case.

The first objection is that the assignment may have the effect of postponing the creditors, on account of the sale on credit, which may be considered as a part of the subsequent arrangement. The effect of the arrangement, it

may be claimed, was the same as if the trustee had been authorized to sell on a credit, and had so done.

This question of a sale on credit, under assignment, for the benefit of creditors, has been much [discussed in some recent cases in New York, and there is conflict of opinion in the Courts of that State. 2 *Comst.* 365; 4 *Sandf.* 252; 11 *Barb.*, 138. See 16 *Ala. R.* 570.

Without examining fully into the question, I am satisfied a sale on credit is not in itself fraudulent. It may be, and doubtless is in many cases, the wisest thing that can be done. Its propriety may depend, in a great measure, on the character and amount of the property, and the surrounding circumstances. In such a case as the present, without some proof on the point, I could not undertake to say that such a circumstance, in itself, indicated fraud.

Stress appears to be laid, in this case, on the character of the mortgage. If O'Connell is to be considered as the owner of the property at the time of its execution, and remaining in possession after the execution of such a mortgage, I should be bound to hold that as to *his creditors* the mortgage was void. But I cannot see how the creditors of Walsh can object to the validity of a mortgage executed by O'Connell. They might very properly refer to it as a circumstance affecting the transaction as between Walsh and O'Connell, and argue that if the sale from Walsh to O'Connell were real, and in good faith, he would not execute such a mortgage. But when the mortgage is given after that sale and for the benefit of the creditors of Walsh, it must be considered valid as to them, if they choose to take the benefit of it, and an objection to it can only come from the creditors of O'Connell.

And this brings me to another question, and that is whether the validity of the assignment to Ryan, depends on the express assent of the creditors of Walsh. On this point I consider the law to be clear, that if the assignment be not on its face fraudulent, or cannot be condemned as fraudulent, the assent of the creditors is to be presumed, and the property is considered as having passed to the assignee. When you find the assignment to be injurious to the creditors, which a fraudulent assignment might be, it will require proof of their express assent—and this would ratify even a fraudulent assignment; unless it be so found, their assent is to be presumed.

That it was competent for Walsh and O'Connell, notwithstanding the invalidity of the previous transaction between them, to make an arrangement which would operate as an assignment of the property to the creditors of Walsh, very clearly results from the decision of the Supreme Court in Brown *v.* Webb, 20 *Ohio* 389. In fact it was simply righting the wrong they had before done to the creditors, and the only question in this case has been whether this was done in a satisfactory manner.

On the whole I am satisfied, that by the arrangement, the property passed from Walsh, so as to be no longer liable to a levy on an execution against him. If the arrangement is in any other respect unsatisfactory to the creditors—if the property is not sufficiently secured, their remedy is by some other proceeding. I am unwilling to hold that it is competent for a particular creditor to prevent an equal distribution of the property or its proceeds, among all the creditors. The principle that equality is equity, bears strongly upon questions of this kind.

In the view I have taken of the matter, there is some

difficulty as to the costs, growing out of the question whether the property belongs to Ryan or O'Connell, a point which I have not thought it necessary fully to examine. I shall, however, hold that the possession and interest of O'Connell are sufficient to enable him to sustain the suit, and find accordingly for the plaintiff, and assess his damages at one cent, and shall enter a judgment for the costs.

A. H. McGUFFEY for plaintiff.