LIZZIE HANNON, an Infant, etc., Appellant, *v*. JOHN T. AGNEW
et al., Respondents.

*It seems* that the provision of the act of 1875 in reference to the New York
and Brooklyn bridge (§ 8, chap. 300, Laws of 1875), making it the duty
of the trustees to appoint " an adequate police force " for the protection
of the bridge and persons passing over it ; imposes the duty of making
such appointments upon the trustees as a body ; they cannot delegate
the power to any subordinate officer.

In an action against the trustees of said bridge company as individuals to recover damages for injuries alleged to have been caused by their negligence, it appeared that plaintiff was thrown down by a crowd upon the bridge, trampled upon and injured.    Forty-four policemen had been appointed by the superintendent of the bridge, who performed duty as regular policemen, one-half being on duty at the time. *Held*, that assuming the policemen were not legally appointed, as the injury did not arise from any such illegality, the defendants' neglect in making regular appointments did not make them liable.

The bridge had but just been opened to travel, and the defendants were without experience as to its management.   On the day of the accident 87,000 persons passed over the bridge, on other days before a larger number passed over safely, and on the day before 183,000 so passed over. There was no evidence that the acting policemen were not competent, or were not properly directed. *Held*, that conceding the number of policemen was inadequate, there was nothing in the case making it the duty of the trustees to know that fact, prior to the accident, or to charge them with negligence in not having a greater number.

(Argued June 27, 1884 ; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made May 28, 1884, which affirmed a judgment of the General Term of the City Court of New York, affirming a judgment in favor of defendants, entered upon an order dismissing plaintiff's complaint on trial.

This action was brought against defendants, who were the trustees of the New York and Brooklyn bridge, to recover damages alleged to have been sustained in consequence of negligence on their part in the performance of their duties as such trustees.

The said bridge was opened for public travel May 24, 1883. On May 30, 1883, plaintiff, in crossing over the bridge from New York to Brooklyn, was caught in a crowd, thrown down, trampled upon and injured.

The facts out of which the alleged negligence arose are stated in the opinion.

*Daniel R. Liddy, James M. Liddy* and *William M. Liddy* for appellant.   When an individual sustains an injury by the

misfeasance or nonfeasance of a public officer, who acts, or omits to act, contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case. (*Adsit* v. *Brady*, 4 Hill, 650; *Robinson* v. *Chamberlain*, 34 N. Y. 391; *West* v. *Trustees of Brockport*, 16 id. 168, note.) The defendants were guilty of personal neglect of official duty, in failing and neglecting to appoint " an adequate police force," and in failing and neglecting " to regulate and direct the same," as prescribed and commanded by section 8, chapter 300, Laws of 1875. (*Newton* v. *Benson, Exr., etc.*, 13 N. Y. 587; 44 id. 113; 1 Denio, 457; *Clark* v. *Miller*, 54 N. Y. 528; 44 id. 250; 17 Wend. 250; *Barrett* v. *Fish*, 75 N. Y. 303.) A failure to keep a public highway in repair by those who have assumed that duty from the State, so that it is unsafe to travel over the same, is a public nuisance, making the party bound to repair liable to indictment for the nuisance, and to an action at the suit of any one who has sustained special damage. (*Robinson* v. *Chamberlain*, 34 N. Y. 390.) The superintendent could not perform a duty about appointing a police force which the statute conferred and imposed on the trustees alone. (*Adsit* v. *Brady*, 4 Hill, 630; *West* v. *Trustees of Brockport*, 18 N. Y. 168, note; *Robinson* v. *Chamberlain*, 34 id. 389; *Comm'rs* v. *Adams*, 13 Hun, 429; *Murphy* v. *Comm'rs of Emigration*, 28 N. Y. 134; *Hall* v. *Smith*, 2 Bing. 156; *Bassett* v. *Fish*, 75 N. Y. 303; *Hover* v. *Barkhoof*, 44 id. 113; 11 Wall. 158.) As to what is the proximate cause of injuries or death from a wrongful or negligent act is a question of fact for the jury to determine from the evidence, and not a question of law for the court. (*Payne* v. *T. & B. R. R. Co.*, 83 N. Y. 572; *Hart* v. *H. R. Bridge Co.*, 80 id. 622; *Hays* v. *Miller*, 70 id. 112; 83 id. 7, 121; 67 id. 417.) Where a plain duty was devolved upon certain officers, any one injured by a non-performance or imperfect performance of that duty should take his remedy against the officers and not against the city. (*Fitzpatrick* v. *Slocum*, 89 N. Y 365; *East River Gas L. Co.* v. *Donnelly*, 93 id. 557.)

*Bergen & Dykman* and *A. J. Vanderpoel* for respond-
ents.

EARL, J. It is not claimed that the defendants can be made
liable in this action for any thing but their own personal negli-
gence or omission of duty; and the only allegation against
them is that " they were guilty of personal neglect of official
duty in failing and neglecting to appoint an adequate police
force, and in failing and neglecting to regulate and direct the
same as prescribed and commanded by section 8, chapter 300,
Laws of 1875." That section provides " that it shall be the
duty of the said trustees to appoint, and they are hereby au-
thorized to appoint an adequate police force, and to regulate
and direct the same for the protection of the said bridge and
of the travel over the same, and of all persons, vehicles, rail-
road cars and animals using or passing over the same; and the
policemen so appointed shall have and possess all the powers
of policemen of the cities of New York and Brooklyn. The
compensation of the said policemen shall be fixed by the said
trustees, and shall be a charge against said bridge and paid by
said trustees."

As the policemen were to some extent to be public officers,
it was the duty of the trustees, as a body, at some legal meet-
ing to appoint them. The appointment could be made in
some formal manner, or by recognizing them in some way as
policemen after their selection by some other person. The
trustees could not delegate their appointment to some subordi-
nate officer connected with the bridge so that their existence
would be due solely to the action of such officer.

We may assume that the forty-four policemen were appointed
by Martin, the superintendent of the bridge, and hence that
they were not legally appointed. But the injury to the plaintiff
did not come from the fact that they were not legally appointed.
For aught that appears, this police force was just as efficient,
and just as useful as it would have been if there had been no
flaw in its appointment. The policemen acted and performed
duty as regular policemen, and the bridge would have been no

safer for public travel if they had derived their existence from some formal action of the board of trustees. The trustees are not responsible to the plaintiff for any omission of duty, unless that omission was the proximate cause of her injuries. For the purposes of this action, therefore, the forty-four policemen appointed by Martin alone, or by him after consultation with some of the trustees, must be held as regular policemen authorized to do duty as such.

The bridge was opened to the public on the 24th day of May, and the accident happened on the 30th day of May, 1883. The trustees were without experience as to the management of the bridge, and the exigencies that might arise in its use. They could not foresee, and no one could anticipate such a calamity as occurred. On one of the days after the opening of the bridge 183,000 persons passed over in safety, and on other days before the day of the accident a larger number than passed over on that day, which was 87,000, crossed without harm.

There was no evidence that the policemen on duty were not perfectly competent for the duties which devolved upon them, nor that they were not properly directed. There is no satisfactory evidence that twenty-two were not a sufficient number of policemen to be in attendance upon the bridge at one time. But if the number was inadequate, there is nothing in the case which made it the duty of the trustees to know that it was inadequate, and charge them with negligence in not having a greater number there. With the experience they then had, it could not be said that they knew, or might have known, that a larger number was required.

The precise cause of the calamity on that day does not appear in the evidence. It seems to have been due to some accident or panic which no human foresight could have anticipated or prevented. As against these defendants, there was nothing whatever for submission to the jury.

A more extended discussion now is not needed, as the opinions in the courts below are ample to justify the judgment rendered, which should now be affirmed.

All concur, except DANFORTH, J., absent.

Judgment affirmed.