ARTHUR C. VEATCH, Plaintiff, *v.* JOSEPH A. BRODERICK, Superintendent of Banks, and Others, Defendants.

Supreme Court, Nassau County, October 12, 1932.

*George A. Spiegelberg*, for the plaintiff.

*John J. Kuhn*, for the defendant Joseph A. Broderick.

CUFF, J. Motion to sever and dismiss action against defendant Joseph Broderick. This is an action for negligence against the Superintendent of Banks of the State of New York as an individual. Plaintiff is a depositor of the Bank of North Hempstead. Certain officers of that bank with the Superintendent are the defendants. Plaintiff's claim of negligence is pleaded in the following manner: He alleges that sections 42 and 133 of the Banking Law create a duty in his favor because they provide: " It shall be the duty of the superintendent to require all corporations * * * to make to him the regular periodical reports of their condition prescribed by this chapter " (§ 42); that " within ten days after service upon it of the notice * * * every bank shall make a written report to the superintendent, which report shall be in the form and shall contain the matters prescribed by the superintendent and shall specifically state the items of capital, deposits, specie and cash items, public securities and private securities, real estate and real estate securities, and such other items as may be necessary to inform the public as to the financial condition and solvency of the bank " (§ 133). The complaint continues that the Superintendent, in accordance with those statutes, called upon the Bank of North Hempstead to file such reports as of the close of business on June 30, 1931, and September 30, 1931, showing its " resources " and " a report of the public and private securities " and their values; that reports were filed; that they did not conform to the law or the Superintendent's demand as to form; that he " negligently failed to require " that reports be filed conforming to the law; that the defects as to form were apparent; that the reports set forth what purported to be the value of the securities owned by the bank; that " the value of the securities as so stated in said reports was negligently stated * * * in excess of their true value;" that the Superintendent, who had knowledge of their incorrectness, should have taken some action to the end that, when published, these reports would reflect the actual condition of the bank; that the reports, " negligently and wrongfully accepted " by the Superintendent, were published on July 17, 1931, and on October 9, 1931; that plaintiff read them in the publication; that he relied upon their contents; that on December 26, 1931, he deposited a sum of money in the bank; that on the same day the bank was closed, and that he

lost his money in whole or in part as a result of the Superintendent's negligence. Assuming that all of these facts are established, the question presented is: Did Mr. Broderick, as Superintendent, owe this plaintiff a duty, the violation of which would sustain this action? The complaint does not directly charge that Mr. Broderick personally handled this matter. If his subordinates were in charge, should they be held? The doctrine of *respondeat superior* does not apply to a public official and his subordinates. (*Dowler* v. *Johnson*, 225 N. Y. 39.) By reading certain allegations of the complaint, it might be inferred that Mr. Broderick personally participated in the negligence of which plaintiff complains. For that reason the question, as it affects the responsibility of Mr. Broderick as Superintendent, to one who read the notice, will be considered. Duty and right are corelative terms. Before an individual may assert a right he must prove a duty owed to him by the defendant. (Terry Principles of Anglo-American Laws, §§ 113 to 115.) In the case of *Hannon* v. *Agnew* (96 N. Y. 439) the statute directed the trustees of the Brooklyn Bridge, upon its opening, to appoint " an adequate police force." There were accidents on the day of the opening. Plaintiff's intestate, who was killed, sued the trustees. The court held that under the statute the duty was owed, not to plaintiff's intestate, but to the public in general; that no negligence could be predicated upon such a duty. In *Alamango* v. *Board of Supervisors of Albany County* (25 Hun, 551, 552) a prisoner sued the managers of a prison on the ground that he was obliged to work near a circular saw and as a result was injured. The court held: " In the performance of all such duties it is settled by the unanimous agreement of the courts that these agencies are not liable for neglect or misfeasance unless the liability is especially imposed by statute." It should be noted that the prisoner was not merely one of the public but was a member of a group that the statute affected. In *Strong* v. *Campbell* (11 Barb. 135) a statute required the postmaster to publish unclaimed letters in the newspaper having the largest circulation in his city. He did not publish the list. Plaintiff's paper had the largest circulation and sued for lost profits. The court held that plaintiff had no action, because the statute was enacted, not to enrich publishers, but to give publicity as to the undelivered letters, to the end that the addressees might receive them. The court determined the purpose of the legislation in each of those cases and the decision was controlled by it. There are many other instances where a statute similar to section 43 of the Banking Law requires the performance of a general duty by a public official. In each instance, the court has nonsuited the plaintiff because he could not show that the duty was imposed for

his especial benefit. In *Walker* v. *Broderick* (141 Misc. 391) it was held that the Banking Superintendent, as an individual, owes no duty to the stockholders, depositors and customers of a bank. To hold the Superintendent personally responsible to each reader of the report, the Superintendent would have to receive and inspect the reports personally. (*Dowler* v. *Johnson, supra.*) The vast number of banks in the State prohibits this.

It should not be assumed that the Legislature imposed a duty impossible of performance. But plaintiff contends that the report should not have been published because, when filed, it showed solvency, whereas the bank was insolvent, to the knowledge of Mr. Broderick. Is the Superintendent to be held responsible to readers for the complexion of the report, when published? Let us assume an example. A report is filed on December first. The bank's securities are of such values that it is solvent, and the report shows it. The statute gives a thirty-day period in which to publish. On December thirtieth the report is published. By that time the securities have greatly depreciated in value. In fact, when published, the values given are grossly excessive and the bank is hopelessly insolvent. Add to that, that the Superintendent knew of the fall in values before the report was published. What could he do, according to law, about it? The law gives him no authority to suppress the report. On the contrary, it commands the bank to publish it. Section 133 specifically requires the publication of " every such report " filed with the Superintendent. That does not mean some new report drawn to suit the occasion. It means the report, without changes, that was filed with the Superintendent. Whether it be good or bad, whether it shows solvency or insolvency, it is to be given publicity. Securities have fluctuated recently to such an extent that everyone knows that the example just given has been the actual experience of many business men. It is unquestionably the duty of every official to perform properly every duty imposed upon him by law and he may be punished for every failure to do his duty to the injury of the public or an individual. It does not follow, however, that some one has a right of action against him to recover private damages for every neglect or violation of his duty. (*Strong* v. *Campbell,* 11 Barb. 135.) Where is the duty to the individual reader of this publication? The nature of the report may give the answer. These reports are required to be filed, when demanded by the Superintendent, for the purpose of keeping the latter informed as to the condition of the banks. They are published to give the public the same information. Observe the language employed in section 133: " * * * which report * * * shall contain * * * such other items as may be

necessary to inform the public as to the financial condition and solvency of the bank. * * * " It may be noted that it does not say " inform the depositors." The Superintendent does not make up the reports nor does he publish them. " Every such report * * * shall * * * be published by the bank." (Banking Law, § 133.) Penalties are provided for failure to file, as well as for filing false, reports. (Id.) The law gives the Superintendent the widest scope with respect to these reports. He may demand them at any time. He gets his information when and as often as he calls for it. Whatever is given the Superintendent, however, must be passed on to the public by the bank within thirty days. The intention is to lay before the people of the community the actual condition of their bank. How can it be argued that the Superintendent should suppress that publication? The whole scheme would fail if he were allowed to call in the bankers and with them " correct " the report. Nowhere in the Banking Law is the power given to him to refuse to file the report submitted by the bank. The publication of the report is designed to protect the public against laxness on the part of the Superintendent, as well as anything else. If he could not suppress or correct them, he should not be held responsible for the contents of the reports. How can a duty be spelled out? The act of negligence that Mr. Broderick permitted publication of these incorrect reports fails because he had no control over the publishing. That act designated as " negligently and wrongfully accepting " the reports must also fail because he had no choice but to accept what was filed. The law required the bank to file and him to accept. His " accepting " was observing the law. Negligence cannot be predicated on an act performed in obedience to law. It is clear also that there was no duty by Mr. Broderick especially in favor of the plaintiff, either as an individual or a member of a class.

The motion to dismiss is granted.