### ·COLORADO PAV. CO. et al. v. MURPHY.

#### (Circuit Court of Appeals, Eighth Circuit. January 18, 1897.)

#### No. 849.

1. PUBLIC OFFICERS—BREACH OF DUTY—RIGHTS OF CITIZENS.
    One who seeks relief from the courts for a breach of a duty imposed upon public officers by statute must show that he has a vested right to the discharge of that duty, and that the statute which imposed it was enacted for the benefit of himself and others in a like situation.

2. SAME—ACTION FOR BREACH OF DUTY.
    If the duty was imposed for the benefit of another person or class of persons, and the complainant's advantage from its discharge is merely incidental, and not a part of the design of the statute, no such right is created as forms the subject of an action at law or of a suit in equity.

3. MUNICIPAL CORPORATIONS—LETTING CONTRACTS—RIGHTS OF LOWEST BIDDERS.
    The usual provision in city charters that contracts for public work shall be awarded to the lowest reliable and responsible bidders was not enacted to furnish employment for contractors, or to benefit a bidder for such work, but with the design to benefit and protect the property holders and taxpayers of the municipalities.

4. SAME—RIGHTS OF TAXPAYERS—INJUNCTION.
    Taxpayers and property holders whose rights of property will be injuriously affected by the fraudulent or arbitrary violation of this and similar provisions of city charters may maintain a suit to enjoin such action by public officers whose duty it is to comply with them.

5. SAME—RIGHTS OF LOWEST BIDDERS—INJUNCTION.
    But the lowest reliable and responsible bidder for a contract for public work has no such vested or absolute right to a compliance with such provisions of the statutes as will entitle him to maintain an injunction against their violation by public officials, because these provisions of the statutes were not enacted for his benefit, or for the benefit of his class.

6. SAME.
    The presentation by a reliable and responsible bidder of the lowest bid for a contract for public work to officials whose duty it is, under the charter of a city, to let the contract to the lowest reliable and responsible bidder, but who have the right, under the statute, to reject all bids, and who have given notice in their advertisement for bids that they reserve the right to reject any and all bids, does not constitute an agreement that they will make a contract for the work with such a bidder; nor does it vest in him such an absolute right

to the contract as will authorize a court of equity, at his suit, to compel the officials, or the municipality they represent, to enter into a contract for the work with him, when they are about to award, or have awarded, it to a higher bidder.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

A. B. Seaman and James H. Brown (Frederick A. Williams and G. Q. Richmond with them on the brief), for appellants.

W. H. Bryant (C. S. Thomas and H. H. Lee with him on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.   This is an appeal taken by the mayor and the members of the board of public works of the city of Denver and the Colorado Paving Company, a corporation, from an order of the court below enjoining them from paving, and from entering into any contract for paving, a street named "Broadway," in that city, until the final hearing upon the bill of complaint in this suit.   The appellee was the complainant in this bill, and he bases his right to this injunction and to other relief upon the sole ground that he was the lowest reliable and responsible bidder for this paving, and therefore entitled to this contract, under the provisions of the charter of the city of Denver.   He alleges that the Colorado Paving Company, a corporation, and F. O. Blake & Co., a co-partnership, and the board of public works of the city of Denver, entered into a conspiracy and agreement to the effect that the paving company and Blake & Co. should bid extravagant prices for the paving contracts in the city of Denver; that the specifications for the contracts and the awards of them should be so manipulated that the bids of all others should be excluded and rejected, and all the contracts should be divided between the paving company and Blake & Co.   He alleges that the board of public works performed its part of this agreement, and that in order to do so it violated many provisions of the charter of the city of Denver.   He avers that, in violation of a provision of that charter that the board, before ordering any improvement, shall adopt full details and specifications for the same, permitting and encouraging competition (Sess. Laws Colo. 1893, p. 202), it restricted the sources from which the material for paving this street might be obtained to asphalt lakes and mines whose output was controlled exclusively by the two favored contractors, and arbitrarily excluded from use upon it an asphalt of equal standard and quality, called "Alcatraz Asphalt," which the complainant offered to and could furnish, and that in violation of a provision in the city charter that such a contract shall be let to the lowest reliable and responsible bidder, after a public advertisement of not less than 10 days, in which the board shall reserve the right to reject all bids, and, upon rejecting all bids, may again advertise (Sess. Laws Colo. 1893, p. 218), the board reserved in its advertisement for bids for this work the right to reject any and all bids, and then awarded the contract

for paving this street to the Colorado Paving Company, notwith-standing the fact that the complainant was the lowest reliable and responsible bidder, and made an offer to pave this street with Alcatraz asphalt for $12,000 less than the amount for which the paving company offered to do the work. The appellee alleges that he incurred considerable expense in preparing his bid, that he deposited a certified check for $5,000 as a guaranty that he would enter into the contract if it was awarded to him, and that he would have made a profit of more than $2,000 if his bid had been accepted and he had performed the contract. He prays for the decree of the court that the board shall canvass and accept his bid and award him the contract, and that it be enjoined from contracting for the paving of the street with any other party. None of the appellants answered this bill, but the motion for the preliminary injunction was heard upon affidavits. Each of the members of the board of public works made an affidavit in which he denied that he had entered into the conspiracy and agreement charged in the bill, and stated that he had investigated the standard and quality of the various asphalts, and had come to the conclusion that Alcatraz asphalt was inferior to the asphalt accepted, and was unfit for use for paving purposes in the city of Denver. He also stated that, in excluding it for use there, he had acted solely in the interest of the public. The overwhelming weight of the testimony was, however, that Alcatraz asphalt was equal in standard and quality to the accepted asphalts for paving purposes; and the testimony tended strongly to show that the Colorado Paving Company and F. O. Blake & Co. had agreed to divide the paving contracts of the city of Denver between them, and that they were not, in reality, competitive bidders. Upon this state of facts the court below issued a temporary injunction.

The record presents a preliminary question which demands decision before we can enter upon the consideration of the weight and effect of the testimony it contains. The question is this: Has the lowest, but unsuccessful, bidder for municipal work, any such vested right to or interest in the contract for it as will enable him to maintain a suit to compel its award to him, and to enjoin the successful bidder and the municipality from entering into a contract for the performance of the work because that contract has been awarded to a higher bidder in violation of the usual provision in city charters that such work shall be let to the lowest reliable and responsible bidder? In other words, has the lowest bidder the legal capacity to maintain such a suit as that at bar? That taxpayers, whose taxes are to be increased and whose property is to be depreciated in value by the fraudulent or arbitrary violation of this provision by the officers of a municipality, may maintain a bill to enjoin their proposed action, is a proposition now too well settled to admit of question. Times Pub. Co. v. City of Everett (Wash.) 37 Pac. 695; 1 Beach, Pub. Corp. §§ 634, 635; 2 Dill. Mun. Corp. § 922; 2 High, Inj. §§ 1251–1253; Davis v. Mayor, etc., 1 Duer, 451; Crampton v. Zabriskie, 101 U. S. 601; Mayor, etc., v. Keyser, 72 Md. 106, 19 Atl. 706; People v. Dwyer, 90 N. Y. 402. These suits, however, stand upon the ground that the statutes on which they are based were enacted, and the du-

ties there specified were imposed upon the public officers, for the express benefit of the property holders and taxpayers who bring the suits. The appellee pays no taxes for this paving. He has no property that will be injured by the violation of the provisions of the charter relied upon, and no one who has is here to complain of their violation. So far as the purpose of its enactment is concerned, the complainant is a stranger to the statute,—one whose interests were not considered or intended to be conserved by its enactment. He is a mere bidder for some of the public work of this city,—a contractor, or one who desires to be a contractor. His interest and that of his class, the contractors with municipalities for public work, is to get the highest price for their work and materials. It is obvious that this statute was not enacted for their benefit. If it had been, the legislature would have provided that the contracts should be awarded to the highest, rather than to the lowest, bidders. In reality this suit is nothing but a contest between rival contractors for the patronage of the city of Denver. One of them has obtained the award of a contract from that city, and the other is in this court asking a decree that the city be enjoined from making a contract with his rival, and be compelled to make it with him, because some of the public officers of that city have violated certain provisions of the city charter enacted for the sole benefit of its property holders and taxpayers. It is plain that, in the absence of these provisions in the charter, the officers of this city would have had the right to award this contract to any bidder, high or low, and the complainant would have had no cause for complaint. There is no doubt that these provisions were enacted for the benefit of the property holders and taxpayers of the city of Denver, and not in the interest or for the benefit of bidders or contractors for municipal work. How, then, can this bidder maintain a suit for their violation? He cannot. It will be soon enough to consider the effect of such a violation when some of those for whose benefit these statutes were enacted complain of it. Until then, the courts must withhold their hands. The rule of law which governs this case, and points unerringly to this result, is unquestioned; and it is nowhere stated more clearly than in Strong v. Campbell, 11 Barb. 135, 138, where Judge Johnson says:

"Wherever an action is brought for a breach of duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty, and that the duty was imposed for his benefit. But where the duty was created or imposed for the benefit of another, and the advantage to be derived to the party prosecuting, by its performance, is merely incidental, and no part of the design of the statute, no such right is created as forms the subject of an action."

It is upon this principle that it is now settled by the great weight of authority that the lowest bidder cannot compel the issue of a writ of mandamus to force the officers of a municipality to enter into a contract with him. High, Extr. Rem. § 92; State v. Board, 24 Wis. 683; Com. v. Mitchell, 82 Pa. St. 343, 350; Kelly v. Chicago, 62 Ill. 279; State v. McGrath, 91 Mo. 386, 3 S. W. 846; Douglass v. Com., 108 Pa. St. 559; Madison v. Harbor Board (Md.) 25 Atl. 337. And the courts hold that he cannot maintain an action at law for damages for their refusal to enter into the contract. Talbot Pav. Co. v. City

of Detroit (Mich.) 67 N. W. 979; Gaslight Co. v. Donnelly, 93 N. Y. 557. This principle is as fatal to a suit in equity as to an action at law. It goes not to defeat any particular cause of action, but to defeat the right to any relief. Nor is this an unjust or inequitable result. One who offers to contract to do work for a city that he knows has the right to reject his bid ought not to have the power to compel that city to enter into a contract with him simply because it decides to make a contract for the same work with his rival. He knowingly puts the labor and expense of preparing his bid at the hazard of the city's action. It is admitted that, if the city rejects all bids, he has no rights, no equities; and we fail to see how its acceptance of another's bid can give to the unsuccessful bidder any greater right than he would have had if all bids had been rejected.

It is insisted, however, that this suit can be maintained as a suit for the specific performance of a contract, and that the issue of the injunction can be maintained as ancillary to that suit. It is argued that the filing by the complainant of his bid and his certified check for $5,000, as a guaranty that he would enter into the contract if awarded to him, concluded a contract between him and the board that he should have the contract if he was the lowest reliable and responsible bidder. But this argument overlooks the fact that it takes two to make a bargain. The complainant may have agreed to this, but it is very evident that the board did not. The board had passed a resolution, of which the complainant had notice before he made his bid to pave this street with Alcatraz asphalt, that in its opinion that kind of asphalt was not of the standard of quality required by its specifications, and that bids based upon it would not be accepted. It gave notice in its advertisement for bids that it reserved the right to reject any and all bids. Under these circumstances, the complainant offered to pave the street with Alcatraz asphalt for $12,000 less than the Colorado Paving Company offered to pave it with one of the asphalts called for in the advertisement, and his bid was rejected. It is difficult to see how these facts indicate a meeting of the minds of the members of the board and the complainant on the proposition that he should receive the contract if his bid was the lowest. To our minds, they seem to prove clearly that there was no such contract. As there was no contract, no specific performance of a contract can be decreed in this suit. Since the complainant failed to get the contract, through the violation by public officers of duties imposed upon them by statutes that were enacted for the benefit of others, and not for his benefit, he cannot compel the award of the contract to himself on account of this violation. He stands, therefore, where the bidder for a contract whose offer is rejected usually stands. It is true that he has not gained the profits he hoped to make if his offer was accepted, but it is also true that he has lost nothing that he did not willingly risk on the chance of its acceptance, and he has no cause of action either at law or in equity against the party to whom he made his offer. Since the complainant cannot obtain this contract himself, the injunction which restrains the city from making a contract for the same work with his

rival contractor can give him no relief, and it must be dissolved. Let the order granting the preliminary injunction be reversed, with costs, and let the case be remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.