UNITED STATES WOOD PRESERVING CO. v. SUNDMAKER, Director
of Public Service, et al.

(Circuit Court of Appeals, Sixth Circuit. April 20, 1911.)

No. 2,092.

1. COURTS (§ 366*)—FEDERAL COURTS—JURISDICTION.

Where a city public service director rejected complainant's bid for a
public improvement and awarded the contract to another, whether a
federal court may review the director's action, enjoin the performance
of and annul the contract made, and compel an award to and the making
of a contract with complainant, is a question of local law to be deter-
mined on the facts and the statutes involved, as construed by the state's
highest tribunal; the federal court having authority to grant complain-
ant any relief to which he may be entitled.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 366.*]

2. EVIDENCE (§ 9*)—JUDICIAL NOTICE—MATTERS OF SCIENCE.

Under the rule that courts will take notice of whatever is generally
known within the limits of their jurisdiction, and, if the judge's memory
is at fault, he may refresh it by resorting to any means for that pur-
pose which he may deem safe and proper, especially as applied to mat-
ters of science involved in cases before him, the court would take ju-
dicial notice that creosote oil of commerce called for by the specifications,
providing for the paving of a street with wood blocks treated with
"dead" oil of coal tar, contained both anthracene and anthracene oil.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 8; Dec. Dig.
§ 9.*]

3. MUNICIPAL CORPORATIONS (§ 241*)—BIDS—REGULATION—STATUTES—EXE-
CUTION.

Laws providing that public contracts shall be made with the lowest
and best bidders with or without the right on the part of the awarding
officer or board to reject any and all bids are for the benefit of property
holders and taxpayers, and are to be executed with sole reference to the
public interest.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
673; Dec. Dig. § 241.*]

4. MUNICIPAL CORPORATIONS (§ 336*) — STREET IMPROVEMENTS — BIDS — AU-
THORITY OF DIRECTOR.

Rev. St. Ohio § 1536—679, relating to the letting of contracts for street
improvements, authorizes the board of public service to reject any and
all bids, and vests in it a discretion which will not be interfered
with by mandamus where such discretion has not been abused, and no
vested right of the bidders is involved. Held, that the duties of the
director of public service of a city under such section were not merely
ministerial, but were discretionary and deliberative, and that he was
authorized not only to reject any and all bids, but was required to
determine who was the best as well as the lowest bidder, acting solely
for the public good, the law requiring him to consider, not only the
financial ability, business judgment, capacity, skill, responsibility, and
reputation of the various bidders, but also the quality of the materials
proposed to be supplied.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
862; Dec. Dig. § 336.*]

5. MUNICIPAL CORPORATIONS (§ 336*)—STREET IMPROVEMENTS—PAVING—BIDS
—SPECIFICATIONS.

Rev. St. Ohio § 1536—679, confers on a board of public service the
right to reject any and all bids for public improvement, and vests

in it a discretion which will not be interfered with unless abused. The director of public service of Cincinnati, having advertised for bids for the paving of a street with creosote blocks, required the bidder to deposit samples of the blocks treated and untreated and a sample of the "dead" oil of coal tar with which it was proposed to treat the blocks, specifying that such oil must be of a specific gravity, under distillation, free from carbon and adulterations, but did not specify the quantity of anthracene or anthracene oil which it should contain. It appeared to be a fact capable of scientific demonstration that the greater the quantity of anthracene oil contained in such product the more lasting would be the blocks treated therewith. *Held*, that the director in determining who was the lowest and best bidder was entitled to consider the fact that the sample of material submitted by complainant, the lowest bidder, did not contain the maximum of anthracene or anthracene oil, and for that reason to award the contract to the next higher bidder, whose sample contained a larger amount or the maximum of such substance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 862: Dec. Dig. § 336.*]

6. MANDAMUS (§ 92*)—MUNICIPAL OFFICERS—AWARD OF CONTRACT FOR PUBLIC IMPROVEMENT.

The submission by a reliable and responsible bidder of the lowest bid for contract for public work to an official whose duty it is to let the contract to the lowest and best bidder, but who has the right to reject any and all bids, does not constitute an agreement that the officer will make a contract with such bidder for the work, nor does it give the bidder such a right to the contract as will authorize a court of equity, at his instance, to compel the officer to enter into a contract for the work with him, when such officer is about to award or has awarded it to another higher bidder.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 92.*]

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Bill by the United States Wood Preserving Company against John H. Sundmaker, Director of Public Service of the City of Cincinnati, Ohio, and others. The bill having been dismissed on demurrer, complainant appeals. Affirmed.

The complainant, an unsuccessful bidder for a public contract, filed a bill to enjoin the performance of and annul the contract awarded to a competitor, and to compel the acceptance of its bid and the execution of a contract with it. Demurrers to the substance of the bill, for want of equity, and misjoinder of parties were interposed and sustained, for the reason that the complainant is without capacity to maintain the bill. The complainant declining to plead further, the bill was dismissed and a reversal of the trial court's action is now sought.

The averments of the bill, in so far as material, are as follows:

The director of public service, in pursuance of proceedings duly had by the city council of Cincinnati, advertised for bids for the improvement of a portion of Reading Road with wood block. Concerning the wood block and oil to be used in the construction of the improvement the specifications provided as follows:

"The bidder must deposit with the board of public service, at the time of making his bid, samples in suitable boxes or jars, of the following materials intended to be used, properly labeled with the name or brand of the contents, viz.:

"Sample of not less than 1 quart of heavy or 'dead' oil of coal tar.

"Two blocks each, of both treated and untreated blocks.

"Each labeled with the name of the bidder and the name of the street on which he is a bidder.

\*   .\*   \*   \*   \*   \*   \*   \*   \*   ●   \*   \*

"The heavy or 'dead' oil of coal tar shall conform to the following specifications when tested: The specific gravity of 68 degrees F, shall not be less than one and ten hundredths (1.10). When distilled in a retort, with the thermometer suspended not less than one (1) inch above the oil, it shall lose not more than thirty-five (35) per cent. up to three hundred and fifteen (315) degrees C.

"The distillation shall be made with approximately 100 grams of oil in a six-ounce retort.

"The distillation shall be completed within thirty (30) minutes after the first portion of the distillate passes into the receiver.

"Explanation. Any oil which does not contain more than three-fourths (¾) of one (1) per cent. of free carbon will for the purposes of these specifications be held to be 'free from carbon.'

"The oil shall be free from carbon and shall contain not more than two and one-half (2½) per cent. of matter in suspension. The oil must be free from adulterations, and it must be obtained wholly and entirely from coal tar and must not contain any oil derived from water gas tar, oil gas tar or other tars."

The complainant submitted a bid offering to construct the improvement for $250,367.50. The chemist of the director having analyzed the several samples of oil submitted reported that complainant's did not meet the requirements of the specifications because it did not contain the largest possible amount of anthracene and anthracene oil. Its bid was thereupon rejected and that of Henkel & Bro. for $262,827.20 was declared to be the lowest and best, and a contract was duly made with them to construct the improvement. The lowest bid was rejected on account of impurities in the sample of oil submitted. One of the five bids higher than complainant's, but lower than that of Henkel & Bro., was ignored because the sample tendered was the oil of tar. The bill alleges that the complainant's bid complied with all the requirements and conditions of the specifications, that they do not require or provide that the oil of coal tar in the sample submitted with its proposal, or to be used in the treatment of the block, shall contain the largest possible amount of anthracene and anthracene oil, or any of either, that complainant's sample contained a large amount of both anthracene and anthracene oil, and that its bid is the lowest and best and itself the lowest and best bidder and consequently entitled to the contract. The bill further charges that the rejection of its proposal on the sole ground that the sample of complainant's oil did not comply with the specifications because it did not contain the largest possible amount of anthracene and anthracene oil, and the finding that the bid of Henkel & Bro. was the lowest and best and they the lowest and best bidders, were not based on the proposals, or on facts contained therein, or on the analyses or tests of the samples submitted, or on the requirements, conditions, or provisions of the specifications, and were untrue in fact, and that such finding and the making of the contract with Henkel & Bro. were arbitrary, in contravention of law and of the specifications, a violation and abuse of the corporate powers of the city and of the lawful discretion of the director, and in violation of the complainant's rights, for the protection of which it has no adequate remedy at law. Complainant is financially responsible, and ready, able, and willing to perform the contract according to its requirements.

The material portions of the General Code involved are as follows:

"Sec. 4328. The director of public service may make any contract or purchase supplies or material or provide labor for any work under the supervision of that department not involving more than five hundred dollars. When an expenditure within the department other than the compensation of persons employed therein, exceeds five hundred dollars, such expenditure shall first be authorized and directed by ordinance of council. When so authorized and directed, the director of public service shall make a written contract with the lowest and best bidder after advertisement for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city.

"Sec. 4329. The bids shall be opened at 12 o'clock noon, on the last day for filing them, by the director of public service and publicly read by him. Each bid shall contain the full names of every person or company interested in it, and shall be accompanied by a sufficient bond or certified check on a solvent bank, that if the bid is accepted a contract will be entered into and the performance of it properly secured. If the work bid for embraces both labor and material, they shall be separately stated with the price thereof. The director may reject any and all bids. Where there is reason to believe there is collusion or combination among bidders, the bids of those concerned therein shall be rejected."

Lawrence Maxwell, Joseph S. Graydon, and Joseph L. Lackner, for appellant.

Edward M. Ballard, for Sundmaker and others.

Louis J. Dolle and James B. O'Donnell, for August Henkel & Bro.

Before SEVERENS and KNAPPEN, Circuit Judges, and SATER, District Judge.

SATER, District Judge (after stating the facts as above). [1] Under the facts stated, may a court review the director's action in rejecting complainant's bid and in awarding a contract to and entering into a contract with Henkel & Bro. and enjoin the performance of and annul the contract thus made, and compel an award to and the making of a contract with the complainant?

The question presented is one of local law, and must be decided with reference to the well-pleaded facts, the statute involved, and the construction, if any, given to it by the state's highest tribunal. If the bidder has an enforceable right, this court may afford him relief.

The bill alleges that the specifications did not call for an oil containing the largest amount of anthracene and anthracene oil, or any of either. The dead oil of coal tar is commonly called "creosote," and is extensively used as a preservative in the treatment of wood block for paving. It had previously been specified for such purpose in public lettings in Cincinnati. State v. Miller, 10 Ohio Cir. Ct. R. (N. S.) 406. In that case the complainant was a party, and, having regard to the difference in registering degrees of temperature on the Centigrade and Fahrenheit thermometers, the specifications as to the character of oil there under consideration were substantially the same as in this case.

[2] The rule is well settled that courts will take notice of whatever is generally known within the limits of their jurisdiction, and, if a judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper. This extends to such matters of science as are involved in cases brought before him. Brown v. Piper, 91 U. S. 37, 42, 23 L. Ed. 200; King v. Gallum, 109 U. S. 99, 101, 3 Sup. Ct. 85, 27 L. Ed. 870; Eureka Vinegar Co. v. Gazette Printing Co. (C. C.) 35 Fed. 570; Wigmore on Ev. § 2580; 7 Ir .. Ev. 1031, 1032. Notice, therefore, will be taken of the fact that the creosote oil of commerce called for by the specifications contains both anthracene and anthracene oil. Anthracene is one of its high boiling constituents, a fact which the specifications themselves suggest. The United States Department of Agriculture, as shown by "Circular No. 98, Quantity and Character of Creosote in

Well Preserved Timbers" and "Circular No. 141, Wood Paving in the United States," to determine what is in fact a good oil for the preservation of wood, has repeatedly extracted the creosote employed for that purpose from treated timber, and, in so far as the results are shown and tabulated in Circular No. 98, the distillates have uniformly shown the presence of anthracene oil, and in most instances in a large amount. Heavy oils of coal tar which contain the greatest percentage of anthracene oil remain almost indefinitely in the treated wood and protect it from decay and boring animals, the timbers treated being the most lasting when such oil is present in the largest quantity.

Considering the bill in the light of the well-known facts disclosed by science, it first recites that the specifications call for an oil necessarily possessing certain constituents, and then subsequently denies that the specifications require the presence of those constituents in such oil. The denial must be ignored, because a demurrer does not admit allegations which are impossible or which the law adjudges to be untrue. 6 Ency. Pl. & Pr. 338. Disregarding, therefore, the statement that the specifications did not require that the oil submitted as a sample and to be used in preparing the wood block for the construction of the improvement should contain anthracene and anthracene oil, the averment is that the complainant complied in all respects with the requirements and conditions of the specifications in that the sample of oil submitted by it with its bid contained large and substantial amounts of those ingredients, but that the specifications did not require that such oil of tar should contain the largest amount of them. But to say that the sample submitted contained large and substantial amounts is not the same as saying that those are the amounts necessary to meet the test which the director reserved the right to make and for which the specifications called.

[5] The amount of anthracene and anthracene oil in heavy oil of coal tar which would stand the prescribed test is not stated, but, if that amount is less than the greatest, there was no prohibition against the submission or acceptance of samples containing more of those ingredients than is found in the prescribed minimum standard. Each bidder was at liberty to select the quality of oil he proposed to use, but his submitted sample was required to contain both of those ingredients, and, the larger the percentage of them in the oil to be used, the more durable would be the improvement and the greater the benefit the public would derive from it. One bid was rejected because the oil therewith submitted contained an excess of free carbon, another because the sample of oil offered was an oil of tar, and not a coal tar product. Complainant's bid was rejected because the oil it proposed to use did not contain the largest possible amount of anthracene and anthracene oil. The lowest bid then remaining was that of Henkel & Bro. It was also held to be the best, and the logical conclusion to be drawn from the bill is that it was accepted because it was adjudged to contain a larger amount of those ingredients than the complainant's.

[3] Laws which provide that public contracts shall be made with the lowest and best bidders, with or without the right on the part of the awarding officer or board to reject any and all bids, or which contain kindred provisions, are enacted for the benefit of property hold-

ers and taxpayers and not for the benefit of or to enrich bidders, and are to be executed with sole reference to the public interest. State v. Commissioners of Shelby County, 36 Ohio St. 326, 331; State v. Board, 81 Ohio St. 218, 90 N. E. 389; Colorado Paving Co. v. Murphy, 78 Fed. 28, 31, 23 C. C. A. 631, 37 L. R. A. 630; State v. Commissioners of Public Printing, 18 Ohio St. 386, 390.

[4] The director, whose duties in awarding the contract were not merely ministerial, but discretionary and deliberative, was not only vested with the power to reject any and all bids, but was required, acting solely for the public good, to determine who was the best as well as the lowest bidder. In determining these questions, the law cast on him the duty of considering the financial ability, the business judgment and capacity, the skill, responsibility, and reputation of the various bidders, and the quality of the materials proposed to be supplied. Inquiry, investigation, comparison, deliberation, and decision were necessarily involved. The state court has declared the rule applicable to such a situation in State v. Board, 81 Ohio St. 218, 90 N. E. 389, which is relied on by both parties and which dealt with the statute under consideration in this case, and in Ohio v. Hermann, 63 Ohio St. 440, 59 N. E. 104, which involved a statute which required the contract to be made with the lowest and best bidder. Both were suits in mandamus by unsuccessful bidders. Both of them, citing State v. Commissioners, 36 Ohio St. 326, broadly announce that the rule is well settled that, where authority is given by statute to a board to let a contract to the lowest and best bidder, discretion is thereby conferred which the courts will not undertake to control.

The first paragraph of the syllabus in State v. Board is as follows:

"By section 1536—679, Revised Statutes, pertaining to the letting of contracts for street improvements, discretion is given a board of public service to reject any and all bids, and this discretion will not be interfered with by mandamus where such discretion has not been abused and no vested right of any bidder is involved."

The complainant insists that the logical inference to be drawn from that paragraph is that the discretion given to reject any and all bids will be interfered with by the courts whenever such discretion has been abused. But the syllabus must be considered in connection with the opinion and in the light of the issues and facts of the case. Booco v. Mansfield, 66 Ohio St. 121, 135, 64 N. E. 115. The language of the opinion is clear that the discretion with which a court will interfere is a discretion exercised with a fraudulent intent to the injury of the party complaining, and that injury must be to a vested right. There is no charge in this case of a fraudulent intent. What the bill alleges after admitting that the samples of oil submitted by bidders were tested is that the finding against the complainant and in favor of Henkel & Bro. is untrue and not based on analyses or tests of submitted samples, or on the requirements, conditions and provisions of the specifications, and that the director's action was arbitrary, in contravention of law and the specifications, and a violation and abuse of the corporate powers of the city and of his lawful discretion. Moreover, the complainant did not acquire and does not have a vested right.

The statutory provision authorizing the director to reject any and all bids was notice to intending bidders, and to the director himself, that by his call for sealed proposals he was not obliged to accept any bid that might be made, or to award a contract thereon, unless he deemed the bid the lowest and best and the bidder satisfactory, and further adjudged the acceptance of the bid and the execution of a contract in pursuance thereof to be for the best interests of the city. The complainant's proposal bound neither party, and, as a contract was not consummated, the city acquired no right against the complainant and the complainant acquired none against it. State v. Board, supra; Commonwealth v. Mitchell, 82 Pa. 350, 351; Kerr & Bro. v. City of Phila., 8 Phila. (Pa.) 292, 293.

[6] The submission, by a reliable and responsible bidder, of the lowest bid for a contract for public work to an official whose duty it is under the statute to let the contract to the lowest and best bidder, but who has the right to reject any and all bids, of which fact the bidder is bound to take notice when and before his bid is submitted, does not constitute an agreement that the officer will make a contract with such bidder for the work; nor does it give the bidder such a right to the contract as will authorize a court of equity, at his instance, to compel the officer to enter into a contract for the work with him, when such officer is about to award or has awarded it to another bidder, even though he be higher. Some of the cases decided under statutes permitting the rejection of any and all bids and otherwise similar or kindred to that under consideration, and some of the text-writers, sustaining this view, are State v. Directors and Wardens of the Ohio Penitentiary, 5 Ohio St. 234; State v. Board, supra; State v. Cincinnati, 3 Ohio Cir. Ct. R. 542; State v. County Commissioners, 9 Ohio Cir. Ct. R. (N. S.) 210, 214; Colorado Paving Co. v. Murphy, 78 Fed. 28, 23 C. C. A. 631, 37 L. R. A. 630; Brown v. City of Houston (Tex. Civ. App.) 48 S. W. 760; Kerr & Bro. v. City of Phila., supra; Hoole v. Kinkead, 16 Nev. 217; Anderson v. Public Schools, 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707; Johnson v. Sanitary District, 163 Ill. 285, 45 N. E. 213; Kelly v. City of Chicago, 62 Ill. 280; Douglass v. Commonwealth, 108 Pa. 559; Hanlin v. Independent Dist., 66 Iowa, 69, 23 N. W. 268; Abbott's Munic. Corp. § 268; High's Ex. Leg. Rem. § 92.

The statutes of Ohio amply provide for the protection of taxpayers. The city solicitor is required by section 4311, General Code, to apply in the name of the corporation to a court of competent jurisdiction for an injunction to restrain the misapplication of its funds, the abuse of its corporate powers, or the execution or performance of any contract made in its behalf in contravention of the laws and ordinances governing it, or which was procured by fraud or corruption. Should he fail, upon the written request of a taxpayer of the corporation, to make such application, then such taxpayers may, under the provisions of section 4314, institute suit or proceedings for such purpose in his own name on behalf of the corporation. But cases brought, like this, by a defeated bidder, are not to be confused with those brought by a taxpayer under the foregoing statutory provisions. The one has no

vested right. The right of the other is real and substantial, and the law accords him the privilege of appealing to the courts to determine whether or not that right has been or is about to be invaded.

Boren & Guckes v. Commissioners of Darke County, 21 Ohio St. 311, and State v. Commissioners, 39 Ohio St. 188, are not controlling, or helpful to complainant. They were decided under a statute which required the award to be made to the lowest bidder who would give a good and sufficient bond to the acceptance of the commissioners. In each of them the rule was announced that the commissioners were clothed with a discretion, to be exercised in a reasonable and proper manner, as to the acceptance of a bond, but as to awarding the contract to the lowest bidder their acts were purely ministerial. The utterance in the closing paragraph of the last-named case, on which complainant lays stress, is a dictum, irreconcilable with the preceding portions of the opinion, and in conflict with the rulings made in the later cases of Ohio v. Hermann and State v. Board. It is significant that the case has never been cited by the Supreme Court.

It follows from the foregoing that the bill is wanting in equity, and does not state such a cause as entitles the complainant to relief, and to that extent the demurrers are sustained. No ruling is made on the demurrer for misjoinder of parties.

The lower court is affirmed.