## Bancamerica-Blair Corporation et al. v. State Highway Commission et al.

(Decided June 23, 1936.)

LAWRENCE S. LEOPOLD for appellants.

B. M. VINCENT, Attorney General, A. E. FUNK, Assistant At-

torney General, PETER, HEYBURN, MARSHALL & WYATT, JOHN MARSHALL, Jr., and CLIFFORD E. SMITH for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

On July 1, 1930, the state highway commission issued, sold, and delivered Kentucky Bridge Revenue 4½ per cent. bonds, in an amount in excess of $5,000,-000 par value, pursuant to the authority of chapter 172 of the Acts of 1928 and chapter 157 of the Acts of 1930. This issue was refunded under date of July 1, 1935, by 4 per cent. bonds, of which $5,465,000 par value are outstanding. On May 8, 1936, the state highway commission advertised for sealed bids, to be received and opened at 10 o'clock a. m. on May 29, 1936, for the purchase of a new issue of refunding bonds in the amount of $5,465,000, to be dated July 1, 1936, and to bear interest at a rate not exceeding 3½ per cent.

In the advertisement for bids published by the state highway commission prior to the sale of the first refunding issue dated July 1, 1935, specific terms were set forth upon which the bidders should submit proposals, including in those terms a provision that the successful bidder would, at his own expense, pay for the printing of the necessary trust indentures, and for the engraving or lithographing of the bonds. In the advertisement published under date of May 8, 1936, for the sale of the second refunding issue, nothing was said one way or the other as to printing, lithographing, or engraving.

On May 29, 1936, at the hour stated in the advertisement for bids, three sealed proposals were submitted to the highway commission pursuant to its advertisement. One of the three bids was so far below the other two as not to merit consideration, and we have no question concerning it in this case. Of the other two bids, one was by a syndicate headed by the Bancamerica-Blair Corporation, the members of the syndicate being the plaintiffs in this suit, and the other bid was submitted by Blyth & Co., representing a syndicate composed of a number of brokerage houses, which, together with the members of the state highway commission, are the defendants in this suit. Both syndicates submitted bids for bonds bearing 3 per cent. interest, payable semiannually, and each agreed to

pay a specified premium for the bonds. The premium which the Bancamerica syndicate agreed to pay was $2,185.50 in excess of that which the Blyth & Co. syndicate agreed to pay. Bancamerica expressly stated in its bid that it would pay the cost of the printing of the trust indentures, but that it would not pay the cost of furnishing, engraving, or lithographing of the bonds. Blyth & Co. expressly stated that it would pay the cost of printing the trust indentures, but did not say whether it would or would not pay the cost of furnishing, engraving, or lithographing the bonds. The only differences between the Bancamerica bid and the Blyth & Co. bid were in the higher premium agreed to be paid by Bancamerica and in the provision in the Bancamerica bid to the effect that it would not pay the cost of furnishing, engraving, or lithographing the bonds. At the opening of the bids, the commission called the attention of the bidders to the difference in the proposals regarding the furnishing of the bonds, and the Blyth & Co. representative thereupon stated that last year, when it was the successful bidder for the first issue of refunding bonds, it had paid the costs of furnishing the bonds and that it intended and expected to do the same thing again if the award was made to it. The Bancamerica representative objected to this explanation of the bid of Blyth & Co., and, on being overruled, then offered to do the same thing. The commission thereupon submitted the question to the Attorney General for his determination of the "best bid" in so far as the interest of the commission and of the commonwealth was concerned. The Attorney General was of the opinion that the Blyth & Co. representative might validly "explain" the meaning of its bid and that, in view of former dealing between the Blyth & Co. syndicate and the highway commission, it might reasonably be assumed that the intention to pay for furnishing the bonds was implied in the Blyth & Co. proposal. So far as the Bancamerica proposal was concerned, he was of the opinion that such an explanation could not validly be made because the proposal submitted by this syndicate expressly negatived the fact that it intended to pay for furnishing the bonds. The Attorney General therefore recommended the acceptance of the Blyth & Co. proposal as the "highest and best" bid under section

4356s-10' of the Kentucky Statutes. The commission thereupon accepted the offer of Blyth & Co. and passed an order calling in the outstanding 4 per cent. bonds for payment on July 1, 1936.

This suit was then filed in the Franklin circuit court by the Bancamerica-Blair Corporation, together with the other members of its syndicate, against the state highway commission and Blyth & Co., the latter as a member, representative, and manager of the successful syndicate. In their petition the plaintiffs prayed for a declaration of rights as to the validity of the action of the highway commission in awarding the contract to Blyth & Co. and asked that the award be set aside and declared invalid, and that the contract be awarded to the plaintiffs. A general demurrer to the petition was sustained, and plaintiffs declined to plead further. The court then entered a judgment dismissing the petition, and this appeal followed.

At the outset it may be observed that the appellants are seeking a mandatory order to require the highway commission to accept their proposal in lieu of the Blyth & Co. proposition. In section 4356s-9 of the Statutes, dealing generally with the letting of contracts by the commission, it is provided:

"The commission may reject any and all bids made either for material for construction or for the bonds or any one or more of them."

Clearly, the discretion of the commission under this provision of the statute is an absolute one, and it could reject the appellants' and all the other proposals with or without cause. Under such circumstances, it is patent that we are without right to require the commission, against its will, to enter into a contract with the appellants, howsoever appealing may be the equities in their favor. As said in United States Wood Preserving Co. v. Sundmaker (C. C. A. 6) 186 F. 678, 684:

"The submission, by a reliable and responsible bidder, of the lowest bid for a contract for public work to an official whose duty it is under the statute to let the contract to the lowest and best bidder, but who has the right to reject any and all bids, of which fact the bidder is bound to take notice

when and before his bid is submitted, does 'not constitute an agreement that the officer will make a contract with such bidder for the work; nor does it give the bidder such a right to the contract as will authorize a court of equity, at his instance, to compel the officer to enter into a contract for the work with him, when such officer is about to award or has awarded it to another bidder, even though he be higher.''

See, also, Colorado Paving Co. v. Murphy (C. C. A.) 78 F. 28, 37 L. R. A. 630; Brown v. City of Houston (Tex. Civ. App.) 48 S. W. 760.

Concluding, as we must, that we are without right to require the highway commission to accept appellants' bid, the validity of the contract with Blyth & Co. is still involved if we should determine that that question is properly before us. It is argued for appellants that, even though they may have no standing, as unsuccessful bidders, or as private citizens, to question the validity of the Blyth & Co. contract, nevertheless this merely affects their legal capacity to sue and is a question which could be raised only by a special demurrer to the petition. They argue, therefore, that the appellees waived this want of legal capacity by filing a general demurrer to the petition. Appellees, on the other hand, contend that the question is one properly to be adjudicated on a general demurrer for the reason that it appears on the face of the petition that the appellants have neither a legal nor beneficial interest in the contract which they are seeking to have set aside. They rely on the case of Bannon v. Fox, 199 Ky. 262, 250 S. W. 966, and also on the case of Louisville & N. R. Co. v. Brantley's Adm'r, 96 Ky. 297, 28 S. W. 477, 16 Ky. Law Rep. 691, 49 Am. St. Rep. 291. In the latter case it is said:

''Where one has neither a legal nor beneficial interest in the controversy, either in his own right or as the representative of another, and this appears on the face of the petition, the objection can be, and is properly, raised by a general demurrer. His legal capacity to sue is not involved, but his right to maintain the action either in his own right or as a personal representative. The provision of the Code requiring a special demurrer to be filed

where the legal capacity to sue is wanting has no application to a case like this.''

It is urged for the appellants that the accepted rule to the effect that courts will not ordinarily interfere to control a discretion vested in public agencies has no application to the case at bar because of the fact that it is admitted here that both the Bancamerica and Blyth & Co. syndicates are financially responsible, and therefore the only question which the commission had to determine was which was the highest bid, and it then necessarily followed that the highest bid was likewise the best bid. Plainly, the commission had a discretion and exercised it in determining the financial responsibility of the bidders. That both bidders here happen to be thoroughly responsible concerns does not alter the fact that the commission was under a duty to ascertain their ability to carry out the contract. Furthermore, the question of whether or not the price offered by Bancamerica without furnishing the bonds, and expressly putting this burden on the commission, was a better bid than the lower price offered by Blyth & Co. without referring to who was to furnish the bonds, involved the exercise of judgment in a matter not entirely measured in terms of cash. Admitting all that is argued on this point by appellants, it comes to no more than that the commission was mistaken in its determination of which bid was highest and best. There is no allegation that the commission acted fraudulently, in bad faith, or collusively, in accepting appellees' proposal. Certainly, the commission had power to exercise a discretion in the matter, whether it was exercised soundly or not. The very essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment. Conceding arguendo that an honest mistake may be so glaring as to authorize a court of equity to intervene and to substitute its discretion for that of the individual or board, obviously, such an extraordinary action could be taken only at the instance of some one with a direct interest in the contract. A disappointed bidder certainly has no interest in a contract entered into in good faith with his competitor. Relief could be

granted here only at the instance of the highway commission or of a taxpayer. In any event, the mistake would have to be a material one, and, even if this proceeding before us should be considered as a taxpayer's suit, we would not feel inclined to subject the highway commission to the expense and hazard of readvertising and reletting of bids for a difference of but $2,185.50 on a contract involving $5,465,000. The mistake would possibly cost more to remedy than to accept.

The requirement that the commission take the highest and best bid is enacted for the benefit of the public, and not for the benefit of the bidders. United States Wood Preserving Co. v. Sundmaker, supra. We must approach the question, therefore, from the standpoint of the public interest and expense, and not from the standpoint of individual interests.

Appellants are entitled to the good faith, honest administration of the applicable statutes. This is the utmost possible extent of their rights. Clearly, in the absence of bad faith or dishonesty, no right of theirs has been violated, and they have failed to show either a legal or beneficial interest in the subject-matter of the controversy. It necessarily follows that their petition fails to state a cause of action. Louisville & N. R. Co. v. Brantley's Adm'r, supra.

Judgment affirmed.

Whole Court sitting, except Chief Justice Clay.