# Rice v. Watkins, Commissioner of Highways.

November 21, 1947.

William B. Ardery, Judge.

Arthur W. Grafton and Gregory Hughes for intervening petitioner.

Eldon S. Dummit, Attorney General, and C. F. Kelly, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming.

This action was instituted by Henry Rice, a citizen and taxpayer of Franklin County, against J. Stephen Watkins, Commissioner of Highways of the Commonwealth, in which he attacked the validity of an advertisement the Commissioner caused to be published in a newspaper of Louisville, the Courier-Journal, on October 29, 1947, to the effect that on November 20, 1947, he would receive competitive bids for the purchase of $1,000,000 of bridge revenue bonds to be issued by the Department of Highways for the purpose of acquiring a bridge across the Ohio River connecting the City of Newport with Cincinnati, and known as the "Central Bridge."

Thomas A. Hanauer, a citizen and taxpayer of Kenton County and Vice President and Trust Officer of the

Covington Trust & Banking Company, of Covington, filed an intervening petition. Mr. Hanauer averred that he had under his control a substantial block of stock in the company which owned the bridge and he has a vital interest in the sale of the bonds, and he adopted the allegations of the original petition and added nothing new by his own pleading.

The Commissioner filed answer denying the material averments of the original petition. The only evidence heard was that of the Commissioner, who was called as a witness for appellants. Upon the case being submitted upon the pleadings, exhibits and proof, the court dismissed the petition and the taxpayers appeal.

The validity of the advertisement was attacked on three grounds: First, there was a condition in the contract the Commissioner made to purchase the bridge that all bids for the bonds would be rejected in the event the interest rate in the bonds was not bid as high as 2 per cent, and this provision did not show in the advertisement; second, the advertisement requires the bidders to assume the cost of printing the bonds; and third, it requires the bidders to assume the fee of the attorney who would draw the trust agreement and pass upon the legality of the issue. That part of the advertisement relating to interest reads:

"Bidders may specify the rate of interest for said bonds which must be in a multiple of one-eighth of one per cent and must be the same rate for all of the bonds of the issue. No bid for less than par and accrued interest will be given favorable consideration."

The Commissioner testified that the offer he made to the stockholders of the company owning the bridge contained this provision:

"It is further understood and agreed that this proposal will be subject to cancellation by the Commissioner of Highways in the event that any bonds issued by the Department of Highways to accomplish the purpose of this proposal fail to bring a price equal to at least par for 2% interest rate."

It is urged by appellants that the words last quoted should have appeared in the advertisement so that all

bidders would be placed on a plane of equality, citing State Highway Commission v. Veling, 230 Ky. 381, 19 S. W. 2d 967. In the Veling case the Commission was enjoined from carrying out a contract for the sale of bonds because the set-up was too vague and indefinite as to the terms and conditions of the sale, and the successful bid was likewise indefinite. This necessitated the Commission entering into private negotiations with the successful bidder, which the law forbids. It was there said that the set-up should state what the Commission agrees to do and what the bidder agrees to do, and the advertisement should call for bids in accordance with the terms and the specifications of the set-up.

The Veling opinion does not control in the instant case. Here, the advertisement left the interest rate open, but a ceiling of 6% is put on the interest rate by KRS 180.080, and the advertisement specifies the bonds must bring par and accrued interest. Therefore, it is clear that the main factor, if not the controlling one, to be considered by the bidders is the interest rate they will pay. In other words, instead of the proposed purchasers bidding on the price of the bonds, they are to bid on the interest rate they will pay for bonds which must bring at least par and accrued interest. Certainly, it was not unreasonable for the Commissioner to agree with the company owning the bridge that he would reject all bids that did not call for interest of at least 2%. It was not necessary for the Commissioner to insert this in the advertisement since that instrument states he may reject any and all bids, a privilege given the Department by KRS 180.060. In Bancamerica-Blair Corp. v. State Highway Commission, 265 Ky. 100, 95 S. W. 2d 1068, it was said that the right of the Commission to reject any and all bids is an absolute right and one which may be exercised with or without cause. There is nothing vague or indefinite in the advertisement in the instant case. as there was in the Veling case.

The second contention made by appellants, that the bidders cannot be required to bear the expense of printing the bonds and the trust agreement, was decided adversely to them in the Bancamerican opinion, 265 Ky. 100, 95 S. W. 2d 1068. It is obvious that in the present instance the Department desired to raise the specific

sum of $1,000,000, no more and no less, in floating this issue. And even without the authority of the Bancamerican opinion, we would feel constrained to hold that it could require all printing expense to be paid by the purchasers of the bonds, since KRS 180.160 authorizes the Department to impose such reasonable condition as it deems best in any contract covering the issuance and delivery of bonds.

What we have just said in the foregoing paragraph seems to us to answer appellants' third point that the Department may not require the purchasers to pay the fee of the attorney drawing the trust agreement and passing on the legality of the issue. Again, KRS 180.160 covers the situation. It is evident that in a bond issue of this magnitude some qualified attorney will be called in to pass upon the legality of the bonds. It is the duty of the Attorney General to represent the Department which is sponsoring the issue as an arm of the State. Consequently, the proposed purchasers will likely require an opinion as to the legality of the issue from an attorney representing them. The Department is forbidden by KRS 15.050 to employ counsel in the circumstances presented in this record; therefore, it correctly inserted in the advertisement that such expense will be borne by the bidders. We are not impressed by the argument for appellants that the attorney fee is an open and indefinite sum and may cause a reduction in the amount bid for the bonds, to the great detriment of the Commonwealth. Should that occur, the Commissioner may reject the bids and thereby protect the State's interest, which appellants so zealously say is their only interest in this litigation.

In upholding the validity of the advertisement, which was the only question before the learned trial judge, his judgment inadvertently said the bonds purchased under it will be binding obligations of the Commonwealth. We interpret this to mean that the bonds will be valid insofar as the advertisement affects them. The validity of the bonds themselves was not before the court, and we do not interpret the chancellor's opinion as passing upon that, but as only holding that the advertisement, itself, is valid.

The judgment is affirmed.