**LAUREL CONSTRUCTION COMPANY, INC.,**
Appellant,

v.

**PAINTSVILLE UTILITY COMMISSION,**
Appellee.

No. 2009–CA–000845–MR.

Court of Appeals of Kentucky.

Feb. 19, 2010.

As Modified May 28, 2010.

Discretionary Review Denied by Supreme Court May 11, 2011.

Scott M. Webster, London, KY, for appellant.

Todd C. Myers, Lexington, KY, for appellee.

Before COMBS, Chief Judge; DIXON, Judge; BUCKINGHAM,[1] Senior Judge.

*OPINION*

DIXON, Judge.

Appellant, Laurel Construction Company (Laurel Construction), appeals from an order of the Johnson Circuit Court granting summary judgment in favor of Appellee, Paintsville Utility Commission. Finding no error, we affirm.

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

The Paintsville Utility Commission (Commission) is a municipal entity that operates the water, sewer and gas services in Johnson and Lawrence Counties. In February 2007, the Commission entered into a grant assistance agreement with the Kentucky Infrastructure Authority (KIA) to help fund the construction of a new water tank in Johnson County. Section 3 of the grant agreement provided, in relevant part:

B. The [Commission] shall perform and/or cause to be performed all necessary acts (consistent with KRS 45A and in accordance with applicable laws) to plan, design and construct the Project including: the procurement of land, easements and rights of way; professional services, including but not limited to architectural and engineering services; construction contractor(s); and equipment and/or materials.

The grant money was part of the multi-county coal severance funding provided for in the Kentucky state budget. The remaining funding for the water tank project was to come from the Commission's general fund.

The Commission thereafter hired Sisler–Maggard Engineering, PLLC, as the design engineers for the project. Joe Sisler served as consultant and design engineer. After the project design was complete, the Commission posted an advertisement soliciting sealed bids for a water tank construction project. The bid documents described the project as the construction of a 100,000–gallon "[s]tandpipe water tank including access road, site grading, fencing, electrical service, telemetry, yard piping and miscellaneous appurtenances." The bids were to be accepted until November 15, 2007, on which date the bids would be publically opened and read.

On November 15, 2007, the Commission unsealed the two submitted bids for the project at a public meeting. Laurel Construction submitted a bid of $194,000 to construct a welded-steel, paint-lined water tank. Kentucky Glass Lined Tanks submitted a bid of $228,491 to construct a glass-lined tank.

On November 19, 2007, the Commission received a letter from Sisler advising, "We have made an investigation and evaluation of the 2(two) low bidders and we are familiar with both contractors. Both contractors are competent to perform the work. However, in conjunction with our discussions with the Paintsville Utilities staff, we would recommend as follows: ... KY Glass Lined Tank Systems, Inc." At a December 12, 2007 Commission meeting, the project was formally awarded to Kentucky Glass Lined Tanks.

On April 3, 2008, Laurel Construction filed an action in the Johnson Circuit Court against the Commission alleging that the Commission's rejection of Laurel's bid violated KRS Chapter 45A, Kentucky's Model Procurement Code (KMPC), and Section 2 of the Kentucky Constitution. Following discovery, both parties filed motions for summary judgment. On April 27, 2009, the trial court granted summary judgment in favor of the Commission and dismissed the case with prejudice. This appeal ensued. Additional facts are set forth as necessary.

On appeal, Laurel Construction argues that the trial court erred by granting summary judgment in favor of the Commission and should have, in fact, granted summary judgment in favor of Laurel Construction as to the application and violation of the KMPC. Laurel Construction further contends that notwithstanding the applicability of the KMPC, the Commission's decision was arbitrary and not supported by findings of fact. Finally, Laurel Construction argues that the trial court erred in

finding that it failed to exhaust its administrative remedies.

Summary judgment serves to terminate litigation when there is no issue of material fact and the moving party is entitled to summary judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56. On a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* (Citing *Paintsville Hospital. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)).

■ The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo. Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App.2001) (internal footnotes and citations omitted). *See also Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992).

The KMPC, Chapter 45A, was enacted by the legislature in 1978 and became effective on January 1, 1979. Its stated purposes are:

(a) To simplify, clarify, and modernize the law governing purchasing by the Commonwealth;

(b) To permit the continued development of purchasing policies and practices;

(c) To make as consistent as possible the purchasing laws among the various states;

(d) To provide for increased public confidence in the procedures followed in public procurement;

(e) To insure the fair and equitable treatment of all persons who deal with the procurement system of the Commonwealth;

(f) To provide increased economy in state procurement activities by fostering effective competition; and

(g) To provide safeguards for the maintenance of a procurement system of quality and integrity.

KRS 45A.010(2). The KMPC imposes heightened requirements and reviewing standards on "every expenditure of public funds by this Commonwealth under any contract or like business agreement." KRS 45A.020(1). Such expenditures include competitive sealed bidding on public contracts, such as the project at issue herein. KRS 45A.080; KRS 45A.365. Pursuant to the KMPC, government determinations about the expenditure of public funds, including those with regard to competitive sealed bidding, "shall be final and conclusive unless they are clearly erroneous, arbitrary, capricious, or contrary to law." KRS 45A.355(2). Furthermore,

The decision of any official, board, agent, or other person appointed by the Commonwealth concerning any controversy arising under, or in connection with, the solicitation or award of a contract, shall be entitled to a presumption of correctness and shall not be disturbed unless the decision was procured by fraud or

the findings of fact by such official, board, agent or other person do not support the decision.

KRS 45A.280.

■ Importantly, however, the provisions of the KMPC only apply to a local governmental agency if the agency in question chooses to adopt them. KRS 45A.343(1). *See also E.M. Bailey Distributing Company v. Conagra, Inc.*, 676 S.W.2d 770, 774 (Ky.1984). When the KMPC does not apply to a government entity's actions, the code's "clearly erroneous, arbitrary, capricious, or contrary to law" standard is replaced with the standard established by Kentucky common law. As our Supreme Court noted in *Pendleton Brothers Vending, Inc. v. Commonwealth of Kentucky Finance and Administration Cabinet*, 758 S.W.2d 24, 24–27 (Ky. 1988),

> The general rule in Kentucky if the KMPC is not involved, as stated in *HealthAmerica Corp. of Ky. v. Humana Health Plan, et al.*, Ky., 697 S.W.2d 946, 948 (1985), is that "absent a showing of fraud, collusion or dishonesty, a disappointed bidder [as such] has no standing to judicially challenge the award of a public contract to another bidder."
>
> . . . .
>
> We acknowledge the state of the law applicable to public purchasing before the advent of the KMPC, as expressed in cases such as *A & W Equipment Co., Inc. v. Carroll*, Ky., 377 S.W.2d 895 (1964) and *Fosson v. Fiscal Court of Boyd County*, Ky., 369 S.W.2d 108 (1963), was to assume that when a government agency awarded a contract to one other than the lowest bidder, that award was being made to the best bidder, and one who challenged the bid was required to make specific allegations of fraud or collusion, or similar misconduct, at the outset of the lawsuit in order to

state a case. See also, *Bankamerica[Bancamerica]–Blair Corp., et al. v. State Highway Comm., et al.*, 265 Ky. 100, 95 S.W.2d 1068 (1936).

■ It is undisputed herein that neither the City of Paintsville nor the Commission has adopted the KMPC. Nevertheless, it is Laurel Construction's position that the KMPC applies to this case as a result of the language contained in the grant agreement between the Commission and KIA. We disagree.

■ First and foremost, we do not find that the language of the grant agreement brings the project within the scope of the KMPC. The agreement did not require the Commission to proceed in accordance with the KMPC but rather only parenthetically referenced the Commission's acts as being consistent with KRS Chapter 45A. Second, even if this Court were to hold that the Commission contractually agreed to be bound by the KMPC, Laurel Construction was not a party to the grant agreement and, thus, is without standing to assert a violation. We agree with the trial court's reasoning on this point:

> Under Kentucky law, . . . for a breach of contract as a stranger to the contract, the party must show that he is an intended third-party beneficiary of that contract. *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky.App.1985).
>
> . . . .
>
> In this case, Laurel Construction cannot show that it is an intended beneficiary of the contract. The provisions of the agreement do not indicate that the agreement was made for the actual and direct benefit of Laurel Construction. On the contrary, the agreement's provisions state "the parties agree that the obligations imposed upon them are for their respective benefit ..." And "[i]in the event of default by the Grant-

ee ... [KIA] may declare this Agreement void from the beginning without further obligation to the Grantee and may commence appropriate legal action to enforce its rights under this Agreement...." This language shows an intent between the parties that no other parties have rights thereunder.

Since Laurel Construction cannot show that the grant assistance agreement was made for its actual and direct benefit, it cannot prove that [it] is an intended third-party beneficiary of the agreement. Thus, even assuming that the Utility Commission agreed to follow the Kentucky Model Procurement Code for the Project via the grant assistance agreement, and even further assuming that the Utility Commission breached the agreement by violating the code, Laurel Construction still has no claim because it has no standing to bring suit under the KMPC.

Accordingly, we agree with the trial court that Laurel Construction failed to demonstrate that the Commission's acts were governed by the KMPC and, thus, the trial court properly granted the Commission's motion for summary judgment on such claim.

■ Nor do we find any merit in Laurel Construction's claim that notwithstanding the applicability of the KMPC, the Commission's acts relevant to bidding the water tank project violated Kentucky Constitution's Section 2, which provides, "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Laurel Construction bases this arbitrariness argument on the discretionary language contained in the bid contract, as well as the fact that its bid was rejected despite being the lowest submitted. It is significant, however, that Laurel Construction has not raised any specific claim of fraud, collusion or dishonesty on the Commission's part.

The bid advertisement and contract gave the Commission the right to reject any bid. ("*RIGHT TO REJECT:* Owner reserves the right to reject any and all bids and to waive all informalities and/or technicalities should it be in the best interest of the Owner."). Further, the Commission reserved a great deal of discretion in selecting the bid. ("*METHOD OF AWARD:* The Contracts will be awarded by the Owner to the low responsive, responsible, best and qualified bidder."). Clearly, Laurel Construction was aware from the outset that its bid could be rejected even if it was the lowest submitted. Moreover, under the plain language of the bid contract, the Commission had the right to look beyond the bid price and consider factors such as maintenance and product life. The Commission thereafter concluded that although Laurel Construction was the low-responsive bidder, it was not the **best** bidder. Kentucky law has long recognized that a low bidder is not necessarily the best bidder:

> That it is assumed when a governmental agency awards a contract to one other than the lowest bidder, that the award of contract is still to the best bidder, and the burden is on one who challenges the bid to show not just that the award was not, in fact, to the lowest and best bidder, but that there was an abuse of discretion on the agency's part amounting to fraud, arbitrariness or capriciousness in awarding the contract.

*Handy v. Warren County Fiscal Court,* 570 S.W.2d 663, 664 (Ky.App.1978) (*superseded by statute* as stated in *Pendleton Brothers Vending, Inc.,* 758 S.W.2d 24). "[M]unicipalities have wide discretion in the exercise of acceptance or rejection, and where they reserve the right to reject, the courts will not disturb their actions based

on mere technicality, even if made unwisely or under mistake." *Ohio River Conversions, Inc. v. City of Owensboro,* 663 S.W.2d 759, 761 (Ky.App.1984)

Our review of the record reveals that the Commission's decision to reject Laurel Construction's low bid was not arbitrary but rather was based upon multiple considerations, including the recommendations of the Commission's manager and the consulting engineer. Larry Herald, General Manager of the Commission, testified in his deposition that he recommended that the Commission accept ·Kentucky Glass Lined Tank's bid because in his experience the overall costs of glass-lined tanks were significantly lower, resulting in savings over the long term. Herald explained that the Commission could clean and maintain glass-lined tanks in-house, unlike paint-lined tanks which necessitated outside vendors. Further, paint-lined tanks rust, requiring the costly and disruptive process of draining the tank in order to scrape, clean and resurface the interior. In support of Herald's testimony, the Commission filed inspection and maintenance reports for four of its other paint-lined water tanks. Further, Joe Sisler, the project design engineer, corroborated Herald's opinion as to the longer lifecycle and lower maintenance costs associated with glass-lined tanks.

We find it significant that Laurel Construction and Kentucky Glass Lined Tanks build two entirely different products. The Commission was not presented with two bids for identical tanks and arbitrarily chose the higher bid. The Commission was presented with bids for two different types of water tanks and based upon several factors concluded that the higher bidder would, in fact, provide the better product. We simply cannot conclude that such decision was arbitrary and in violation of the Kentucky Constitution.

Finally, the trial court found that because Laurel Construction premised its case on the Commission's violation of the KMPC, Laurel Construction was required to first exhaust its administrative remedies by filing a protest under KRS 45A.285. The trial court concluded that *"Pendleton* establishes [that] Laurel Construction's failure to file a protest under KRS 45A.285 amounts to a failure to exhaust administrative remedies and bars this Court's review of the Utility Commission's action." ·

Although we agree with the trial court that the KMPC requires a disappointed low bidder to file a protest under KRS 45A.285 in order to exhaust administrative remedies, our conclusion that this case is not governed by the KMPC necessarily renders this argument moot.

For the reasons set forth herein, we affirm the order of the Johnson Circuit Court granting summary judgment in favor of the Paintsville Utility Commission.

ALL CONCUR.